**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-2302

_____

S.A.S.B. CORP, a Florida corporation, individually and as
representative of a class of similarly situated persons, DBA
Okeechobee Discounts Drugs,

Appellant

v.

JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.;
JANSSEN PHARMACEUTICALS INC.

_____

On Appeal from the United States District
for the District of New Jersey
(D.C. Civil Action No. 3:23-cv-21124)
District Judge: Honorable Zahid N. Quraishi

_____

Argued on March 25, 2026

Before: HARDIMAN, SCIRICA\*, and AMBRO, <u>Circuit Judges</u>

(Opinion filed August 7, 2026)

———————

OPINION OF THE COURT

———————

AMBRO, <u>Circuit Judge</u>

      S.A.S.B. Corp. ("SASB") operates a pharmacy in Florida called Okeechobee Discount Drugs. It alleges that two Johnson & Johnson ("J&J") subsidiaries sent an unsolicited two-page advertisement to its fax machine in violation of the Telephone Consumer Protection Act ("TCPA"). The United States District Court for the District of New Jersey dismissed SASB's complaint, finding that the two-page fax is not an advertisement. We disagree. For the reasons that follow, we reverse the District Court's grant of the defendants' motion to dismiss.

———————

\*The Honorable Anthony J. Scirica was unavailable to participate in the decision in this case after argument before the merits panel.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and 3d Cir. I.O.P. 12.1(b).

## I.    BACKGROUND[1]

Janssen Pharmaceuticals, Inc. ("J-Pharm") sells Xarelto, an anticoagulant prescription drug. Johnson & Johnson Health Care Systems Inc. ("J-Care") operates Janssen CarePath, a service its website calls "a patient support program" that "offers . . . savings options and resources at no cost to patients to help them learn about, afford, and stay on their medication." App. 33. The fax SASB received explains that Janssen CarePath helps patients afford Xarelto. Its first page assures the reader that "[o]nce you and your doctor have decided Xarelto[] is right for you, Janssen CarePath will help you find the resources you may need to help get started and stay on track." App. 49. And it offers "help" exploring "options to lower . . . out-of-pocket cost for Xarelto[]" regardless of which type of insurance the reader has. *Id*. The second page explains Xarelto's uses and warns about its side effects. It concludes by instructing the reader to "[e]xplore savings options" at Janssen CarePath's website. App. 50.

The TCPA prohibits using a fax machine to send an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). SASB filed a one-count class action complaint in the United States District Court for the District of New Jersey alleging that J-Pharm and J-Care did just that. The two J&J subsidiaries (collectively, "Defendants") moved to dismiss, arguing that the fax does not constitute an advertisement and that SASB failed to allege plausibly that either of them sent the fax. The District

---

[1] The facts discussed in this section are from SASB's complaint. We accept them as true and view them in the light most favorable to SASB. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).

Court granted Defendants' motion to dismiss on both grounds and dismissed the complaint without prejudice. SASB amended its complaint and re-filed. Defendants again moved to dismiss and advanced the same two arguments. The District Court granted the second motion to dismiss, but this time it based its decision solely on the finding that the fax does not constitute an advertisement within the meaning of the TCPA. SASB appeals.

## II.   DISCUSSION

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. A reasonable factfinder could determine that the two-page fax was an unsolicited advertisement under the TCPA.

The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). We have set out two conditions a fax must meet to qualify under that definition. First, it "must 'promote goods or services to be bought or sold.'" *Robert W. Mauthe MD PC v. Millenium Health LLC* ("*Millenium*"), 58 F.4th 93, 96 (3d Cir. 2023) (per curiam) (quoting *Robert Mauthe, M.D., P.C. v. Optum Inc.*

4

("*Optum*"), 925 F.3d 129, 133 (3d Cir. 2019)).[2] Second, the fax must "have profit as an aim." *Id*. (quoting *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 562 (3d Cir. 2020)). We use an objective standard to assess both prongs. *Id*. And we approach the task of identifying an advertisement "with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

A reasonable factfinder could determine that this fax promotes Xarelto with profit as an aim. SASB alleges that a month's supply of Xarelto costs $400, whereas a comparable supply of Warfarin, a generic substitute, costs only $20. It alleges that Defendants leverage J-Care's CarePath service to reduce the price customers pay for Xarelto, enabling it to compete against cheaper substitutes like Warfarin. These allegations make it plausible that a customer who learns about CarePath will be more likely to choose Xarelto over Warfarin. It is thus plausible that this fax promotes Xarelto by drawing attention to the product's affordability, similar to how a coupon promotes a product by offering the customer a discount. *Cf. Millenium*, 58 F.4th 93, 96 (explaining that "coupons" are "commonly associated with . . . advertisement[s]"). Furthermore, there can be little doubt that a product promotion of this nature has profit as its aim.

---

[2] As the parties discuss, our precedents recognize that a fax might be designed to make a sale to the reader directly, or it might be designed to encourage the reader "to influence the purchasing decisions of a third party." *Optum*, 925 F.3d at 133. The fax here speaks directly to a patient, whom the fax anticipates will be the purchaser, so the third-party liability theory has no bearing on our decision.

We disagree with the District Court's reasons for reaching the opposite conclusion. First, it found that certain words on the first page of the fax "lack a commercial tone." App. 9. Specifically, it pointed to the fax's use of the words "support," "explore," "explain," and "help." *Id*. Lifted from the sentences in which they appear in the fax, those four words of course do not promote anything. Read in context, however, a reasonable fact finder could determine that the fax deploys those words in a way that promotes Xarelto. For example, a sentence appearing on the fax's first page reads that "[w]e can help you explore options to lower your out-of-pocket cost for Xarelto." App. 49. Another states that "[n]o matter what type of insurance you have—or even if you don't have insurance—Janssen CarePath can help explain your medication insurance coverage and potential out-of-pocket costs and help find programs that may help you pay for Xarelto." *Id*. By promising to direct the customer to financial support for the drug, these sentences plausibly "urg[e] the purchase of" Xarelto "by emphasizing" its affordability. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 611 (7th Cir. 2023).

The District Court also noted that the fax's second page contains information about Xarelto's uses and side effects. We grant that, in isolation, the second page appears informational, rather than promotional, in nature. *See Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 222 (6th Cir. 2015). But Defendants cannot avoid TCPA liability by tacking an informational one-pager onto an unsolicited advertisement. And the second page concludes by reminding the reader about the Janssen CarePath offering, referring to Janssen as "your partner for cost support." App. 50. SASB thus alleges plausibly that the two pages, taken together, constitute a single unsolicited advertisement.

**B. SASB alleges plausibly that Defendants sent the fax.**

Defendants argue SASB failed to state a claim because it did not allege plausibly that either J&J subsidiary sent the fax. We disagree. The complaint alleges in no uncertain terms that "Defendants (or somebody acting on their behalf) sent a two-page advertisement to Plaintiff's fax machine." App. 28. The characterization of the fax's content as an "advertisement" may be conclusory. But there is nothing conclusory about the factual allegations that Defendants were the senders of the fax. The fax speaks in Defendants' voice, referring to Janssen in the first person. App. 49 ("At Janssen, we don't want cost to get in the way of treatment you need."). It displays the registered trademark and logo for Xarelto and the tradename and logo for Janssen CarePath. SASB also alleges that the patient's "personalized information [was] apparently merged from a targeting database or list." App. 36.

Defendants say that SASB could have pled information about the "fax cover sheet or fax log showing who might have sent" the fax. Defendants' Br. 29-30. We decline to impose a heightened pleading standard along the lines Defendants suggest. Fed. R. Civ. P. 11(b) obligates SASB's attorneys to investigate the facts and to advance allegations only when they believe those allegations "have evidentiary support" or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." We thus will not assume that SASB had access to a fax cover sheet or log revealing the sender's identity that SASB could have included in its pleadings.

Defendants also argue that SASB's allegation is implausible because the fax contains a specific patient's name

and prescription identifier number. On their telling, it is implausible that J&J or one of its subsidiaries would have access to that kind of information. And they say the most likely sender of the fax was the patient's doctor. However, "the plausibility standard is not akin to a probability requirement." *Doe v. Princeton Univ.*, 30 F.4th 335, 344 (3d Cir. 2022) (cleaned up). Defendants' arguments confuse the two. Our role is not to determine the most likely sender of the fax. At this stage, we evaluate only whether the allegations are plausible. We conclude they are.

And in any event, SASB alleges that the doctor "who wrote the prescription referenced in [the fax]" is located in the Eastern time zone, whereas the header of the fax's first page indicates that it was sent from a location in the Central time zone. App. 34. SASB thus throws some doubt on Defendants' theory that the patient's doctor sent the fax. And, to repeat, SASB's version of events need not be the most probable one to survive a motion to dismiss. In sum, its factual allegations are sufficient to "nudge[]" its claim "across the line" from "conceivable to plausible."[3] *Twombly*, 550 U.S. at 570.

---

[3] Defendants argue SASB waived this argument because it did not say anything in its opening brief as to the plausibility of its allegation that Defendants sent the fax. But the District Court did not dismiss SASB's complaint on that basis. True, in its opinion dismissing SASB's initial complaint, the Court found that SASB failed to allege plausibly that Defendants sent the fax. But in its opinion dismissing SASB's amended complaint, the Court's only ground for dismissal was its finding that the fax does not constitute an unsolicited advertisement. It added that it dismisses the amended complaint "on that basis" and that it will "not reach other arguments." App. 10. That is the

### C. SASB's complaint puts Defendants on adequate notice of the conduct attributed to each of them.

Finally, Defendants argue that SASB failed to "place Defendants on notice of the claims against each of them." Defendants' Br. 35 (quoting *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015)). SASB alleged that "Defendants" (plural) sent the fax. App. 28. They say it violates Fed. R. Civ. P. 8 to impute conduct to both of them collectively. Their argument falls short. Both named defendants in SASB's suit are subsidiaries of J&J. The complaint puts them both on notice that SASB accuses each of them of sending the fax. That is all Rule 8 requires in this context.

Moreover, SASB is candid that, at the pleading stage, it does not know whether one or both Defendants were responsible for "creating, authorizing, or transmitting" the fax. SASB Reply Br. at 11. That is why it seeks discovery—to learn "the division of responsibility" over those tasks. *Id*. at 12. We accept incomplete allegations where the lacking information would be "peculiarly within the defendant's possession." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n. 31 (3d Cir. 2015). SASB's allegations are specific enough to get past the pleading stage and take discovery.

---

decision we are reviewing. Accordingly, SASB did not need to address the plausibility of its allegation that Defendants sent the fax in its opening brief.

9

\*     \*     \*

The District Court erred in determining that the fax sent to SASB was not an unsolicited advertisement under the TCPA. And SASB's complaint otherwise alleges sufficient facts to state a claim. Accordingly, we reverse the District Court's grant of Defendants' motion to dismiss.

Jeffrey A. Berman
David M. Oppenheim
Phillip A. Bock **(Argued)**
Bock Hatch & Oppenheim

Michael J. Canning
Giordano Halleran & Ciesla

Counsel for Appellant

Jennifer Chawla
Michael P. Daly **(Argued)**
Marsha Indych
Faegre Drinker Biddle & Reath

Counsel for Appellee